**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

HOWARD BURKE,

          Plaintiff,

vs.                                                      Case No. 3:04-cv-1091-J-32TEM

R. B. BAKER CONSTRUCTION, INC.,

          Defendant.

_____

## **ORDER**

Plaintiff, Howard Burke, was injured in an auto accident on December 13, 2003 when his car hit a trailer that detached from a truck driven by Danny Neely who, at the time, was an employee of defendant, R. B. Baker Construction, Inc. ("Baker"), a construction company specializing in site and road development. Baker has now filed a Motion for Summary Judgment (Doc. 11), supported by affidavits (Doc. 12), in which it claims that Neely was not acting within the course and scope of his employment at the time of the accident and that Baker therefore bears no liability to Burke for any injuries resulting from this accident. Burke filed a memorandum of law in opposition (Doc. 23) supported by interrogatory responses (Doc. 14), depositions (Docs. 19, 21), an affidavit (Doc. 22), sun and moon data with an explanatory memorandum (Doc. 24, 25), and an audiotape of an interview with Danny Neely (Doc. 26).¹ Although the Court had originally set this case for oral argument, the parties

---

¹Plaintiff filed his complaint in state court on May 19, 2004 and defendant removed it to federal court on October 13, 2004. See Docs. 1 & 2. Defendant moved for summary judgment on December 23, 2004 (after the parties had alerted the Court in a joint motion that defendant intended to file a potentially dispositive early motion for summary judgment), but, upon plaintiff's motion, the Court stayed consideration of defendant's motion until the parties undertook some discovery. See February 15, 2005 Order (Doc. 20), granting plaintiff until

agreed the motion could be decided on the papers.

## I. Background Facts[2]

Danny Neely was employed by defendant Baker as a heavy machine operator for approximately ten years until January 2004 when his physician directed him to terminate his employment for medical reasons unrelated to this accident.  In December 2003 Neely was working at the St. Johns Town Center Mall construction project in Jacksonville, Florida operating a hydraulic excavator to move dirt and lay pipe at the job site.  Occasionally, Baker supervisors would direct employees at this and other job sites to move leftover scrap concrete to fill in ponds or low spots in the ground that were prone to flooding or to use it to support embankments on the site.  When concrete scraps were too large to be used whole, an employee would sometimes use equipment on the job site to crush the materials into smaller useable pieces.  On some occasions, if Baker had no use for the materials, whichever subcontractor brought the materials to the site would be directed to remove them.

In early December 2003, Neely's supervisor, Allan Perry, instructed him to "get rid of" two sixteen foot long concrete pilings that were on the St. Johns Town Center Mall job site. These pilings, which weighed approximately 4000 pounds each, were left on the job site by a subcontractor that had performed work on a bridge and were blocking the way where

---

April 14, 2005 to undertake any needed discovery before responding to defendant's motion for summary judgment.  Although the February 15, 2005 Order also permitted defendant to file a reply, defendant did not do so.  Plaintiff did not move for any additional extension of time in which to engage in any further discovery and the Court finds this motion is now ripe for consideration.

[2]These background facts are either undisputed or are stated in the light most favorable to Burke, the non-moving party.

Baker crews were performing site work.  On December 13, 2003, after completing his work for the day, Neely used Baker's heavy equipment to pick up and move these pilings onto a trailer owned by Baker.  Neely then attached the trailer to his own pick-up truck and drove from the job site toward his home in Folkston, Georgia.  Neely intended to use the pilings near a pond on his property.  On no prior occasion had Neely ever taken materials from a job site for his own personal use and Baker had not given Neely permission to use its trailer or to remove the pilings from the job site.

When Neely was a few miles from the Florida/Georgia border, the trailer hitch broke free from the pick-up truck and the trailer careened across the median into the oncoming traffic.  Before Neely could safely move the trailer, plaintiff Howard Burke struck the trailer with his vehicle, damaging the trailer and Burke's vehicle.  Burke sustained injuries in the accident for which he required emergency medical treatment, hospitalization, and surgery. Neely informed Baker about the accident a few days later.  A supervisor verbally reprimanded Neely for taking the trailer and pilings from the job site without permission. Neely purchased and delivered a new trailer to Baker to replace the trailer damaged in the accident.

## II. Discussion

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Castleberry v. Goldome Credit Corp., 408 F.3d 773, 786 (11th Cir. 2005) (citations and quotations omitted).  "Once the moving party has properly supported its motion

for summary judgment, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." Id. (citations omitted).

In his three count complaint, Burke sues Baker on a theory of vicarious liability for the allegedly negligent acts of Neely (Count One); under the "inherently dangerous activity doctrine" for allegedly ordering or permitting Neely to engage in the inherently dangerous work activity of transporting sixteen foot long concrete pilings on a public highway (Count Two); and for direct negligence in allegedly failing to properly supervise Neely's work activities (Count Three). The parties agree that if Baker successfully shows that no material facts could support a finding that Neely was acting within the course and scope of his employment with Baker, summary judgment is due to be granted on Counts One and Two. See Bennett v. Godfather's Pizza, Inc., 570 So.2d 1351, 1353-54 (Fla. 3rd DCA 1990) (employer's duty to third parties under the principle of respondeat superior arises only when employee's tort committed in course and scope of employment).[3]

---

[3]Under Florida law, the inherently dangerous activity doctrine applies to hold an employer vicariously liable for the acts of an *independent contractor* whose negligence injures another party during the performance of inherently dangerous activity conducted on behalf of the employer. See Florida Power & Light Co. v. Price, 170 So.2d 293, 295 (Fla. 1965); Restatement (Second) of Torts, § 427 (2005). See, e.g., Hirschenson v. Westway, Inc., 728 So.2d 1216, 1217-18 (Fla. 3rd DCA 1999) (applying inherently dangerous activity doctrine to determine whether landowner was vicariously liable to jogger for independent contractor's failure to clear debris from demolition site on landowner's property). The Court found no authority under which to hold an employer vicariously liable under the inherently dangerous activity doctrine for the actions of its *own employee* and there is no dispute that Neely was Baker's employee (though Burke may not have known that at the time he filed his complaint). Nonetheless, the Court has proceeded to consider whether the *allegations* of Count Two (sans the legal theory of liability under which it is brought) would support a claim of liability against Baker. As there is no dispute that Neely was Baker's employee at the relevant time, and there is no dispute that Burke is alleging that Neely's actions caused him injury while Neely was acting on behalf of Baker, Baker can only be liable for the allegations of Count

Although Baker additionally claims (without rebuttal from Burke) that liability for negligent supervision is also contingent on a showing that Neely's actions occurred in the course and scope of his employment, Florida law recognizes a claim for negligent supervision even where the employee's underlying tort is committed outside the course and scope of employment. See Storm v. Town of Ponce Inlet, 866 So.2d 713, 716 (Fla. 5th DCA 2004) (discussing Florida's long-recognized tort of negligent supervision and citing Restatement (Second) of Torts § 317, which states that in certain specified circumstances, employer has "duty to exercise reasonable care so to control his servant *while acting outside the scope of his employment . . .*") (emphasis added); Iglesia Cristiana La Casa Del Senor, Inc. v. L. M., 783 So.2d 353, 358-59 (Fla. 3rd DCA 2001) (discussing whether church was liable for negligent supervision notwithstanding that church could not be vicariously liable for pastor's actions because they were not within scope of employment). Thus, Count Three is discussed separately from Counts One and Two.

A.   Counts One and Two

Baker claims no vicarious liability can attach because Neely was not acting within the scope of his employment when he loaded the concrete pilings into Baker's trailer, drove away from the job site, and became involved in the accident. "The conduct of an employee is within the scope of his employment, for the purpose of determining the employer's vicarious liability to third persons injured by the employee, only if

---

Two under a theory of vicarious liability. Bennett, 570 So.2d at 1353-54. And, as noted above, the parties have not argued to the contrary. Finally, to the extent Count Two could be read to assert a claim of direct negligence against Baker (which, again, is a theory not argued by either party), the evidence would not support it.

5

(1) the conduct is of the kind the employee is hired to perform,

(2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and

(3) the conduct is activated at least in part by a purpose to serve the master."

Sussman v. Florida East Coast Properties, Inc., 557 So.2d 74, 75-76 (Fla. 3rd DCA 1990) (citations omitted).[4]  See also, Carter v. America Online, Inc., 208 F.Supp.2d 1271, 1278-79 (M.D. Fla. 2001) (citing Sussman for articulation of scope of work test for vicarious liability of employers); Castleberry v. Edward M. Chadbourne, Inc., 810 So.2d 1028, 1029 (Fla. 1st DCA 2002) (noting that Sussman opinion discusses standard for Florida's common law doctrine of respondeat superior); Fierro v. Crom Corp., 617 So.2d 379, 380 (Fla. 2nd DCA 1993) (citing Sussman for articulation of scope of work test for vicarious liability of employers); Craft v. John Sirounis and Sons, Inc., 575 So.2d 795, 796 (Fla. 4th DCA 1991) (same).[5]  Although Burke would have to prove all three prongs to demonstrate that Neely's

---

[4] As explained in Sussman, a different standard applies in determining whether an employee acts within the "course and scope" of his employment for purposes of worker's compensation. 557 So.2d at 75. While some cases borrow the worker's compensation phrase "*course and scope*" of employment even in the context of addressing vicarious liability arising from an employee's tort (see e.g., Bennett, 570 So.2d at 1353-54), Sussman and others confine their vicarious liability analysis to consideration of whether an employee's actions arise within the *scope* of employment. In many cases, including this one, there is no meaningful distinction and the Court, like the parties, has used the terms interchangeably. See 6 Fla. Prac., Personal Injury & Wrongful Death Actions § 4.3 (2005 ed.), Scope of Employment, for further discussion regarding distinction between *scope* of employment and *course and scope* of employment.

[5] Defendant offered an alternative analysis of this issue using a test formulated by the Restatement (Second) of Agency, §§ 228 and 229. As noted here, Florida courts regularly apply the Sussman factors and plaintiff's response is confined to addressing the Sussman factors. Although the Court has analyzed this motion using the Sussman factors as well, it

conduct was within the scope of his employment with Baker, consideration of the first factor (whether Neely's conduct was of the kind he was hired to perform) is determinative.[6]

There is no dispute that Neely's job as a heavy equipment operator involved, at least on occasion, moving materials around the job site, including scrap materials such as concrete pilings, when so directed by his supervisor.  However, there is no evidence that Neely's job duties included removing any materials from the job site.  See, e.g., Perry deposition (Doc. 19, Attach. 2) at Tr. 8-9 (testimony of Baker job site supervisor describing day-to-day job responsibilities of Neely and other equipment operators as "ditch excavation, pond excavation" and, on an "as-needed basis," moving materials such as concrete from one location to another on the job site); Neely deposition (Doc. 21, Attach. 2) at Tr. 5, 21 (describing his position of heavy equipment operator or hydaulic excavator as performing finish work on ditches, ponds and other slopes to "straighten it up" after a different employee dug out the dirt); Gilliam deposition (Doc. 21, Attach. 4) at Tr. 6, 18-22 (testimony of Baker heavy equipment operator that his day-to-day job duties include "load trucks, dig some ditches, knock dirt down" and that, on occasion, he would move materials that were in the way off to the side, sometimes using them to stabilize a slope or embankment).

---

has considered the Restatement (Second) of Agency's alternative test and concludes that the result here would not be different.

[6]In reciting the evidence which supports the Court's decision, the Court has not relied on the affidavit of Neely and has no occasion, therefore, to resolve plaintiff's objections to that affidavit. To the extent plaintiff relies on Neely's affidavit as creating a disputed issue of fact on the timing issue, any such dispute is not material to the Court's consideration of the first factor- - whether Neely's conduct was of the kind he was hired to perform.

Neely testified that sometime in early December 2003 he was told by his supervisor to "get rid of" two 16 foot concrete pilings on the job site which were owned by a subcontractor. See Neely deposition (Doc. 21, Attach. 2) at Tr. 29. Although the evidence is not conclusive as to what Neely's supervisor intended for Neely to do with these two specific pilings,[7] there is no evidence anyone at Baker ever directed Neely to remove the pilings from the job site and there is no dispute that Neely has *consistently* maintained that he did not have Baker's permission to do so. See Neely deposition (Doc. 21, Attach. 2) at Tr. 27-29; Audiotaped "Statement of Daniel Neely" (Doc. 21, at Attach. 3) at Tr. 5.[8] Moreover, the undisputed testimony is that scrap concrete materials such as pilings were nearly always used to fill ponds or low spots or to support embankments on the job site and when materials were too big for such use, they could be broken into smaller useable pieces

---

[7]The testimony from Baker supervisors is that they had not yet determined whether the concrete pilings would be used as scrap at the job site or whether the subcontractor would be contacted to remove them. William E. "Sonny" Daniels testified that even if Baker had not yet decided what to ultimately do with the pilings, they at least needed to be moved from their position by a bridge so that Baker could complete its work in that area and that "getting rid of" the pilings may have meant nothing more than moving them off to the side about ten feet. Daniels deposition (Doc. 19, Attach. 1) at Tr. 19-20. See also, Perry deposition (Doc. 19, Attach. 2) at Tr.15 (stating Perry was "shocked" when he heard Neely had removed the concrete pilings from the job site).

[8]The Court has listened to the actual audiotape of this interview between plaintiff's counsel and Neely (Doc. 21) and finds that the unofficial and uncertified "transcript" provided by plaintiff is not entirely accurate. However, Neely does state in that interview that he did not have Baker's permission to remove the pilings from the job site or to use Baker's trailer. While not endorsing the accuracy of the transcript (and noting that defendant also raised objections to its admission), for the parties' convenience, the Court notes that the transcript reflects this portion of the interview on page 5. Although the Court has doubts about the ultimate admissibility of this audiotape, for purposes of this motion for summary judgment, the Court will consider it.

or a subcontractor would be contacted to remove them from the job site. See Neely deposition (Doc. 21, Attach. 2) at Tr. 21, 23-24, 27-29; Perry deposition (Doc. 19, Attach. 2) at Tr. 16-19; Gilliam deposition (Doc. 21, Attach. 4) at Tr. 17-23; Oliver deposition (Doc. 21, Attach. 1) at Tr. 13-14; Williams deposition (Doc. 19, Attach. 1) at Tr. 18, 22, 34-35.

Burke has produced no evidence from which a jury could conclude that loading concrete pilings onto a trailer owned by Baker after the conclusion of the workday and hauling the pilings off the job site (let alone to Neely's home) was the kind of work Neely was hired to perform. As noted above, even Neely testified that he had not been instructed to remove the pilings from the job site and he did not have permission to do so. Thus, Burke has failed to create a triable issue as to whether Neely was acting within the course and scope of his employment with Baker at the time Neely loaded the pilings onto the trailer and drove from the job site toward his home. As a matter of law, therefore, Baker is not vicariously liable for Neely's negligence as alleged in Count One and cannot be liable for permitting or instructing Neely to perform these acts as alleged in Count Two. See Castleberry, 408 F.3d at 786 ("Summary judgment must be granted if the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.") (quotations and citations omitted).[9]

---

[9]Though the Court need not reach the other prongs of the Sussman vicarious liability test, given that the "conduct" occurred after Neely "knocked off" for the day and that Neely's job duties were to be performed exclusively at the job site, there is likewise no evidence from which a jury could conclude "that the conduct occur[ed] substantially within the time and space limits authorized or required by the work to be performed," as the second prong of the three part test requires. Sussman, 557 So.2d at 75-76.

### B.   Count Three

In Count Three, Burke alleges that Baker failed to supervise Neely. Under Florida law, for an employer to be liable for negligently supervising an employee who has committed a cognizable tort against a third-party, the employer must have had constructive or actual notice that the employee was unfit to work; the employer must have failed to take reasonable further actions to remedy the problem, such as investigation, discharge or reassignment; and the injuries sustained by third parties must have been forseeable. Samedi v. Miami-Dade County, 134 F.Supp.2d 1320, 1352 -53 (S.D. Fla. 2001); Storm, 866 So.2d at 716; Iglesia Cristiana La Casa Del Senor, Inc., 783 So.2d at 358-59.

Here, the unrebutted evidence is that Neely had been a model employee for ten years who had never before taken materials or a trailer from a work place without permission. Thus, there is no evidence that Baker was on notice of any improper activities on Neely's part at any time before the December 13, 2003 incident. Burke's only "evidence" that Baker had any knowledge of any improper activity by Neely is that Baker must have known Neely was taking the pilings based on Burke's theory that Neely must have loaded the trailer during working hours[10] at the job site due to the timing of the accident (7:15 p.m. according to Burke) and the amount of time that likely transpired between the loading of the trailer and the accident (approximately two to three hours according to Burke) and because Burke further assumes that the trailer could not have been loaded in the dark.

---

[10]The unrebutted testimony was that most employees left the job site at 5:30 p.m. each day, known as "knock off" time.

10

However, Neely, who is the only person who has testified about his actions in loading the trailer and driving toward Georgia, has stated that he was not sure of the time of day (except that it was after he had completed his day's work) or how much time his activities took, although he attempted to provide estimates from which Burke draws his own conclusions. Neely also testified that no one was at the job site at the time he loaded the pilings. Allan Perry, Neely's supervisor, corroborated this testimony stating that no one at Baker had any knowledge that Neely had taken the trailer until days after the accident, when Neely told his employer. Burke has offered no evidence that anyone actually saw Neely load the trailer or leave the job site with the trailer. Nor has Burke offered any evidentiary support for his statement that "it is not credible to suggest that Neely loaded the trailer in complete darkness"[11] from which Burke would like to infer that Neely must have loaded the trailer during daylight working hours and that other Baker employees must therefore have seen Neely loading the trailer and leaving the job site.[12] See Leigh v. Warner Brothers, Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (noting that non-moving party must meet movant's well supported summary judgment motion with opposing affidavits and may not rest on

---

[11]First, Burke has offered no evidence from which to conclude that loading could not be done in the dark. Second, assuming there was no artificial lighting available (a point about which neither party presented any evidence) it is not clear when "complete darkness" fell on the evening of December 13, 2003- - the sun and moon data plaintiff provided from the U.S. Naval Observatory states that the sun set that day at 5:27 p.m. and civil twilight ended at 5:54 p.m., but complete darkness does not begin until sometime after the end of civil twilight, according to the same U.S. Naval Observatory website Burke consulted to provide the sun and moon data. See http://aa.usno.navy.mil.

[12]The Court has no occasion to determine whether other non-supervisory employees' observations of Neely loading the trailer would be sufficient "notice" to Baker for purposes of Burke's negligent supervision claim.

11

conclusory allegations unaccompanied by any specific supporting facts).

Burke has failed to create a triable issue as to whether Baker had actual or constructive notice that Neely was engaging in any improper activities or was otherwise unfit for work;[13] Baker is therefore entitled to summary judgment on his Count Three negligent supervision claim.

### III. Conclusion

For these reasons, the Court finds defendant's motion for summary judgment is due to be granted as to all three counts of plaintiff's complaint.

Accordingly, it is hereby

**ORDERED**:

Defendant R. B. Baker Construction, Inc.'s Motion for Summary Judgment (Doc. 11) is **GRANTED**. The Clerk shall enter judgment in favor of defendant R. B. Baker Construction, Inc. and against plaintiff Howard Burke and close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of August, 2005.

*[signature]*
TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:
counsel of record

---

[13] Thus, the Court need not reach the issue of whether Baker responded reasonably to any notice it might have had regarding any improper activity by Neely or whether injuries to third parties from an auto accident involving the pilings and trailer were forseeable. See Samedi, 134 F.Supp.2d at 1352-53 (articulating test for negligent supervision under Florida law).